UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE CARL WINQUIST,
JOANNE SANTORO, and
FLOOR COVERINGS PLUS, INC.,

                     Plaintiffs,               Civil Action No. 15-13234
                                             Honorable Terrence G. Berg
v.                                            Magistrate Judge David R. Grand

MACOMB COUNTY SHERIFF MACE
UNIT, DEPUTY PAMELA McLEAN,
DEPUTY CHRISTIAN KOHLMEYER,
DEPUTY CHRISTOPHER FRAZER,
DEPUTY NANCY LePAGE, and DEPUTY
SCOTT JONES,

                     Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'**
**MOTION TO DISMISS [12]**

Before the Court is a Motion to Dismiss filed on November 16, 2015, by Defendants Macomb County Sheriff MACE Unit ("Macomb County"[1]), and Macomb County Sheriff Deputies Pamela McLean, Christian Kohlmeyer, Christopher Frazer, Nancy LePage, and Scott Jones (collectively, the "Individual Defendants" and all together, the "Defendants"). (Doc. #12). This action was filed by *pro se* Plaintiff Duane Carl Winquist ("Winquist"), who also purports to have filed it on behalf of Joanne Santoro ("Santoro") and Floor Coverings Plus, Inc. ("Floor

---

[1] In their Motion to Dismiss, the Defendants argue that the MACE Unit is not a legal entity amenable to suit. (Doc. #12 at 11). Winquist responded to this argument by essentially agreeing with Defendants, and moving to amend his complaint to substitute Macomb County for the MACE Unit. (Doc. #2). Although the Court, in a separate order entered on today's date, denied that motion to amend as moot (Doc. #26), because the parties now agree that Macomb County would be at least a potentially proper defendant, and because the Defendants' Motion to Dismiss "proceeded as if [Winquist's] nomination of the MACE Unit was the functional equivalent of naming the County itself," (Doc. #23 at 2), the Court will refer to this defendant as "Macomb County," and address Plaintiffs' claims against it accordingly.

Coverings").[2]  (Doc. #1).  In response to the Defendants' motion to dismiss, Winquist filed a document entitled "Motion to Amend Complaint and Opposition to Motion to Dismiss."  (Doc. #20).  Defendants filed a reply (Doc. #23), and Winquist filed a sur-reply (Doc. #24).

An Order of Reference was entered on November 16, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).  (Doc. #19).  Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. L.R. 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss (Doc. #12) be **GRANTED**.

## II.    REPORT

### A.    Background

This civil action originates out of the Individual Defendants' execution of a search warrant at the business address of Floor Coverings on January 31, 2014.  (Doc. #1 at 8).  Authorities were apparently searching for evidence of child pornography crimes committed by Winquist, and Winquist has since been convicted of two crimes involving use of a computer to engage in child sexually abusive activity, and sentenced to a term of incarceration of 2-20 years. Floor Coverings' "corporate computer" was seized, and a forensic examination of its contents was apparently conducted at some point.

Winquist alleges that "there was no contraband found" when the forensic examination was conducted.  (*Id.* at 7).  He alleges that "Santoro requested the Data/Information from the

---

[2]  Winquist claims that he is an "Officer" of Floor Coverings, and that Santoro is Floor Coverings' President.  (Doc. #1 at 2, 8).

confiscated corporate computer [e.g., "tax records, 1099 files…customer accounts, referral lists, past clients [sic] records, accounts receivable…"] in order to continue corporate business and an unknown member of M.A.C.E. Sheriff's Unit informed Ms. Santoro that they would not return the corporate computer or any of the Data/Information contained within." (*Id.* at 6). Attached to the complaint is Santoro's affidavit in which she avers that in February 2014, she "asked a person (unknown name) from the Macomb County Sheriff's Department for the corporate computer that was confiscated from Floor Coverings []…A Macomb County Sheriff's Department person (unknown name) said, 'The Macomb County Sheriff's Department would not return the corporate computer or any information [or data on it]…[and that] [t]hey have the right not to return the corporate computer or any information from the corporate computer to you.'" (*Id.* at 11).[3]

On September 8, 2015, Winquist filed the instant complaint pursuant to 42 U.S.C. §1983, alleging that the seizure and retention of Floor Coverings' computer violated his and the other Plaintiffs' rights under the 4th (unlawful search and seizure) and 14th (deprivation of property without due process) Amendments of the United States Constitution.[4] Winquist signed the complaint in his own name, "IN PRO PER," but also purportedly filed it "for: [Floor Coverings

---

[3] In his sur-reply brief, Winquist contradicts Santoro's assertion by stating that Santoro only requested the return of the "Data/Information" on the computer, and that "[t]he computer itself was not requested." (Doc. #24 at 2).

[4] He also claims that the failure to return the property violated Federal Rule of Criminal Procedure 41. (*E.g.*, Doc. #1 at 6, #20 at 2). While Fed. R. Crim. P. 41(g) does allow a person whose property has been unlawfully seized to file a motion for its return, the warrant, seizure, and criminal prosecution in this matter all took place in the Michigan state court system. Thus, Winquist's reference to Rule 41 is inapposite. *See* Fed. R. Crim. P. 1 ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."). However, as discussed below, *infra* at 11-13, the State of Michigan has a similar procedure that Winquist could employ to seek the return of the property at issue, and his failure to avail himself of that procedure is part of what dooms his instant claims.

3

Plus Inc.]." (*Id.* at 10). Winquist also purports to have filed the complaint on Santoro's behalf, as he listed her as an additional party plaintiff. (*Id.* at 2). The complaint alleges that the unlawful acts "caused the closure of Floor Coverings []," and its prayer for relief seeks compensatory and punitive damages, and other unspecified relief. (*Id.* at 10).[5]

### B.      Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants argue that: (1) the claims of Plaintiffs Floor Coverings and Santoro should be dismissed because neither has actually appeared in this action, and they cannot be represented by Winquist; (2) the claims against the Individual Defendants should be dismissed because Winquist does not adequately allege that any of them were personally involved in any wrongdoing; and (3) the claims against Macomb County should be dismissed because Winquist failed to adequately allege a policy or custom that caused him to suffer injury, and because Macomb County cannot be responsible under a respondeat superior liability theory.

### C.      Standard of Review

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[5] The prayer for relief also asks that the Court grant Winquist's separate "Motion for Stay and Abeyance" (Doc. #3). In that motion, Winquist essentially asks the Court to stay this matter until he is "released from incarceration in the [MDOC], and can avail himself competent counsel to represent Floor Coverings [] in this course of actions…" (Doc. #3 at 2). In a separate Order entered on today's date (Doc. #26), the Court denied that motion.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56). *See also Iqbal*, 129 S.Ct. at 1950, ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.") (internal quotations omitted).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S.Ct. at 1949. *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### D. Analysis

#### i. The Complaint Should be Dismissed Without Prejudice as to Santoro and Floor Coverings

As an initial matter, the complaint should be dismissed without prejudice as to Santoro and Floor Coverings because Winquist cannot bring it on their behalf. As noted above, although the instant complaint bears only Winquist's signature, he purports to have filed it "for" Floor Coverings, and also on behalf Santoro, in addition to himself. However, federal law prohibits *pro se* individuals like Winquist from representing other litigants, whether they be other individuals or corporations. 28 U.S.C. §1654 (emphasis added) states:

> In all courts of the United States the parties may plead and conduct ***their own cases*** personally or by counsel as, the rules of such courts, respectively, are permitted to manage and conduct cases therein.

Thus, like any litigant, while Winquist may prosecute his own claims *pro se*, he is limited to representing himself and may not act in a representative capacity for any other person or business. *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007); *Rowland v. California Men's Colony*, 506 U.S. 194, 201-03 (1993) (recognizing that federal law requires that "corporations, partnerships, or associations" must appear in court only through counsel."); *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("[T]he rule of this circuit is that a corporation cannot appear in federal court except through an attorney."); *Van Lokeren v.*

6

*City of Grosse Pointe Park, Mich.*, No. 13-14291, 2014 WL 988965, at *7 (E.D. Mich. Mar. 13, 2014).  Put simply, "[t]he statute does not permit 'unlicensed laymen to represent anyone else other than themselves.'" *Lattanzio*, 481 F.3d at 139 (quoting *Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)).

The Sixth Circuit has specifically held that *pro se* prisoners like Winquist may not represent others in federal court litigation.  For instance, in *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002), the Sixth Circuit held that plaintiffs may not appear *pro se* "where interests other than their own are at stake."  *See also Garrison v. Michigan Dept. of Corrections*, 333 F. App'x 914, 919 (6th Cir. 2009) (holding that pro se litigant may represent himself on his own claims but may not act in representative capacity on behalf of others).  Numerous other courts have similarly held that *pro se* inmates do not have the capability to adequately litigate suits on behalf of others.  *See, e.g., Moore v. Warren*, 2014 WL 1464404, at *3 (E.D. Mich. April 15, 2014) ("[The] case law and plain language of 28 U.S.C. § 1654 preclude [Plaintiff] from representing anyone other than herself."); *Bey v. Youngblood*, 2014 WL 4965956, at *2 (E.D. Mich. October 3, 2014) ("The right to litigate for *oneself* … does not create a coordinate right to litigate for others) (quoting *Myers v. Loudon Cnty. Pub. Sch.,* 418 F.3d 395, 400 (4th Cir. 2005)); *Proctor v. Applegate*, 2008 WL 2478331, at *1, n. 3 (E.D. Mich. June 16, 2008) ("It is well established that plaintiff Proctor may only represent himself with respect to his individual claims and many not act on behalf of other[s].").

Thus, to the extent Winquist purports to have filed the complaint on behalf of Santoro and/or Floor Coverings, this is not allowed.  Accordingly, the complaint should be dismissed

without prejudice as to Plaintiffs Santoro and Floor Coverings.[6]

### ii.    The Complaint Should be Dismissed with Prejudice as to Winquist

#### a.   4th and 14th Amendment Claims against the Individual Defendants

Winquist has failed to state a claim for relief against the Individual Defendants.  In order to demonstrate an individual defendant's liability under §1983, a plaintiff must first establish that the defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S. 137 (1989).  The plaintiff also must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint.  *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Here, while Winquist has adequately alleged that each of the Individual Defendants was a state actor, the only specific conduct he accuses them of is seizing Floor Coverings "corporate computer."  This allegation fails to state a claim for relief under the 4th Amendment, however, as Winquist admits that the seizure was undertaken pursuant to a search warrant, and he alleges no facts whatsoever regarding the propriety of that search warrant or its execution.[7]  *Iqbal*, 129 S.Ct. at 1949.  Merely labeling the search and seizure an "illegal confiscation" clearly fails to provide "sufficient factual matter" to state a claim for relief that is plausible on its face.  *Id.*  Similarly, the complaint fails to state a claim for relief against the Individual Defendants under the 14th Amendment as Winquist does not allege that any of the Individual Defendants is in possession of, or wrongfully refused to return Floor Coverings' computer.  *Id.*

In his opposition brief, Winquist argues that "the sworn affidavit submitted by Mrs.

---

[6] In his motion to amend (Doc. #20 at 2), Winquist states that Santoro's new address is 4000 Tradewinds Dr., Appling, GA  30802.  The Court will update its docket accordingly.

[7] For the same reason, any 4th Amendment claim against Macomb County also fails.

8

Santoro (President of Floor Coverings []), is in fact proof of a <u>Factual Allegation</u> against the [Individual Defendants] …"  (Doc. #20 at 4-5) (emphasis in original).   But Winquist misconstrues the pleading requirement for a §1983 claim against individual defendants.   As explained above, he must allege facts showing that each Defendant was personally involved in the alleged unlawful conduct.   Santoro's affidavit fails to provide such an allegation as it makes clear that she is unaware whether any of the Individual Defendants ever spoke with her, let alone refused her request to return the computer and/or its data.   Indeed, in his response brief, Winquist admits that "Mrs. Santoro was ***unable to name the deputy*** that refused her lawful request for the Data/Information because the deputy did not reveal ***his or her name***."   (*Id.* at 3-4) (emphasis added).   Thus, Winquist admits that neither he nor Santoro can identify whether the person who refused to return the computer was a man or a woman, let alone whether it was one of the Individual Defendants.

In sum, Winquist has alleged no facts from which the Court could find that the Individual Defendants engaged in any unlawful conduct, and his complaint against them should therefore be dismissed.  *Rizzo*, 423 U.S. at 377; *Bellamy*, 729 F.2d at 421.

### b.  14th Amendment Due Process Claim against Macomb County

Winquist's 14th Amendment due process claim against Macomb County fails as a matter of law and should be dismissed.   Section 1 of the 14th Amendment to the United States Constitution provides, in relevant part, "… nor shall any State deprive any person of life, liberty, or property, without due process of law."   This provision is enforceable through 42 U.S.C. § 1983, which prohibits any person, acting under color of state law, from depriving another of the "rights, privileges, or immunities secured by the Constitution."   Therefore, to recover on his 14th Amendment due process claim, Winquist "must show that he was deprived of a constitutionally-

protected property ... interest and that the deprivation occurred without due process." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 334 (6th Cir.2010) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).  Because the target of Winquist's instant claim is a municipality – Macomb County – he faces some additional hurdles.  As the Sixth Circuit has explained:

> A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694, 98 S.Ct. 2018.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Defendants argue that "[Macomb] County cannot be liable for a Section 1983 violation unless [the retention of the computer in question] directly resulted from the implementation of a County policy or custom."  (Doc. #12 at 13) (citing *Thompson v Ahse*, 250 F3d 399 (6th Cir 2001), and *Waters v City of Morristown, TN*, 242 F3d 353 (6th Cir 2001)).  They further claim that Winquist failed to properly allege "the existence of a constitutionally offensive County policy or practice causally related to the harm of which [he] complain[s].  Instead, it appears that [Winquist] predicate[s] the County's liability upon the acts or omissions of its employees."  (*Id.* at 16).

In responding to Defendants' argument that he did not sufficiently allege an actual policy on the part of Macomb County that is unconstitutional, Winquist makes two arguments: (1) that whichever Macomb County employee denied Santoro's request to return the computer and/or its

10

data "demonstrated deliberate indifference;" or (2) alternatively, that if that person "did not know that the refusal was deliberate indifference then [he or she] would not have been properly trained by Macomb County [] causing Macomb County to be liable for a 1983 lawsuit." (Doc. #20 at 4, ¶5).[8]  Neither approach satisfies Winquist's pleading obligations.

### Deliberate Indifference

As to Winquist's claim that the Macomb County employee who denied the request to return the computer and/or data acted with "deliberate indifference," his claim is ripe for dismissal in two respects.  First, as noted above, the law is clear that "[a] municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'"  *Burgess*, 735 F.3d at 478 (quoting *Monell*, 436 U.S. at 694).  Second, even assuming that a Macomb County employee acted in an unauthorized manner by failing to return the computer and/or data to Santoro, Winquist has not shown that he lacked post-deprivation state court remedies to rectify that wrong.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995).  An analogous Western District of Michigan case, *Riddle v. Kent County Sheriff's Dept.*, No. 1:08–cv–1228, 2009 WL 365239, at *6 (W.D. Mich. Feb. 11, 2009), exemplifies this point of law which derives from *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

In *Riddle*, the plaintiff was being investigated in connection with the shooting death of a victim.  Search warrants were authorized and executed at his residences, and certain property

---

[8] In his motion to amend/response, Winquist states that "Macomb County violated [his constitutional rights] when Macomb County failed in it's [sic] responsibility to insure the proper legal procedure is utilized when it's [sic] police agencies confiscate a persons [sic] property and the duty to return confiscated properties when lawfully requested…Macomb County should have policy and procedure in place for it's [sic] police agencies, to properly return property when legally requested."  (Doc. #20 at 2).  These allegations, however, do nothing to actually define the contours of an alleged unconstitutional policy adopted or employed by Macomb County.

was seized.  Riddle was convicted, and at some point sought the return of the seized property to

his family.  He alleged that the Kent County Sheriff's Department employees refused to return

the property.  He further alleged that they were "hostile to Plaintiff and his family when they []

requested return of the items," and that they maintained "a pervasive atmosphere of hostility

toward Plaintiff Riddle and his family when requesting these items be returned."  *Riddle*, 2009

WL 365239, at *1.  Riddle then filed a Section 1983 lawsuit, alleging (as Winquist does in the

instant action) that the County's refusal to return his property amounted to a violation of his due

process rights under the 14th Amendment.  The district court, however, granted the defendants'

motion to dismiss under the *Parratt* doctrine, explaining:

> By invoking the Fourteenth Amendment, Plaintiff appears to incorporate
> his allegations that Defendants have failed to respond to requests to return
> property seized during the Wisconsin searches.  In other words, he appears
> to allege that he has been deprived of his property without due process.

> Plaintiff's due process claim is barred by the doctrine of *Parratt*, []
> overruled in part by *Daniels*[].  Under *Parratt*, a person deprived of
> property by a "random and unauthorized act" of a state employee has no
> federal due process claim unless the state fails to afford an adequate post-
> deprivation remedy.  If an adequate post-deprivation remedy exists, the
> deprivation, although real, is not "without due process of law."  *Parratt*,
> 451 U.S. at 537.  This rule applies to both negligent and intentional
> deprivations of property, as long as the deprivation was not done pursuant
> to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517,
> 530–36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Because Plaintiff's claim
> is premised upon allegedly unauthorized negligent or intentional acts of
> unspecified state officials, he must plead and prove the inadequacy of state
> post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–
> 80 (6th Cir.1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993).
> Under settled Sixth Circuit authority, a prisoner's failure to sustain this
> burden requires dismissal of his § 1983 due-process action.  *See Brooks v.
> Dutton*, 751 F.2d 197 (6th Cir.1985).

> Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged
> that state post-deprivation remedies are inadequate.  Moreover, state post-
> deprivation remedies are available to him.  First, Michigan courts have
> recognized that the circuit court that presided over a criminal proceeding
> has ancillary jurisdiction to consider a post-judgment motion to return

certain property seized by the police during a search. *See In re Property Held by City of Detroit*, 141 Mich. App. 302, 367 N.W.2d 376 (Mich. Ct. App. 1985) (citing *People v. Washington*, 134 Mich. App. 504, 351 N.W.2d 577 (Mich. Ct. App. 1984)). Michigan law also authorizes actions in the court of claims asserting tort or contract claims for money damages "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The court of claims also has concurrent jurisdiction with the state circuit courts for related equitable relief. *See id.*; *see also Pomann, Callanan & Sofen, P.C. v. Wayne County Dep't of Soc. Servs.*, 166 Mich. App. 342, 419 N.W.2d 787, 789 (Mich. Ct. App. 1988). Plaintiff does not allege any reason why either a post-judgment motion in the criminal case or an independent state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's procedural due process claim is barred.

*Riddle*, 2009 WL 365239, at *5-6.

It is appropriate to apply the *Parratt* doctrine to Winquist's case. As noted above, Winquist makes clear that his claim is that an unknown person (whom he presumes was a Macomb County Deputy) acted with "deliberate indifference" in refusing Santoro's request to return the computer and/or its data. However, to remedy that alleged wrong, Winquist could have filed a post-judgment motion in his criminal case for the return of the computer and/or data, and could have instituted a Court of Claims action, as well, and Winquist has not "alleged that [those] state post-deprivation remedies are inadequate," or that he attempted to avail himself of those remedies. *Id.* at *6. Accordingly, as in *Riddle*, Winquist's 14th Amendment due process claim should be dismissed. *See also Jameson v. Oakland County*, No. 10-10366, 2011 WL 328094, at *3-5 (E.D. Mich. Jul. 29, 2011) (dismissing, under *Parratt* doctrine, due process claim of plaintiff who alleged "damage to or complete deprivation of" property seized by municipal defendants because such conduct constituted "random and unauthorized" acts for which the plaintiff could have sought redress in state court).

13

**Improper Training**

Winquist alleges that, if the County employee who denied the request to return the computer and/or date did not act with "deliberate indifference," then he or she must "not have been properly trained by Macomb County [] causing Macomb County to be liable for a 1983 lawsuit." (Doc. #20 at 4, ¶5). This conclusory assertion regarding the training provided by Macomb County is precisely the type of "threadbare" allegation that *Twombly* and *Iqbal* hold to be insufficient as a matter of law. *See Vanzant v. Highland Park*, No. 16-10488, 2016 WL 198400, at *2 (E.D. Mich. Apr. 28, 2016); *see also supra* at 4-5. Accordingly, this claim should be dismissed.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [**12**] be **GRANTED;** with the claims purportedly brought by **Plaintiffs Floor Coverings Plus, Inc. and Joanne Santoro** being **DISMISSED WITHOUT PREJUDICE**, and the claims brought by **Plaintiff Duane Winquist** being **DISMISSED WITH PREJUDICE**.


Dated: June 20, 2016                                s/David R. Grand
Ann Arbor, Michigan                                 DAVID R. GRAND
                                                    United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

14

F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 20, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager